Cite as 2026 Ark. App. 244

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-25-302

| | |
|---|---|
| | Opinion Delivered April 22, 2026 |
| WILLIE ALVIN SMITH | APPEAL FROM THE GARLAND |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 26CR-23-16] |
| V. | |
| | HONORABLE RALPH C. OHM, |
| STATE OF ARKANSAS | JUDGE |
| APPELLEE | REBRIEFING ORDERED; MOTION |
| | TO WITHDRAW DENIED |

**BART F. VIRDEN, Judge**

A Garland County jury convicted appellant Willie Alvin Smith of two counts of rape, and he was sentenced to an aggregate term of sixty-five years' imprisonment. Trial counsel filed a notice of appeal and then withdrew from representing Smith. Appellate counsel was appointed, and she filed a motion to withdraw along with a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Ark. Sup. Ct. R. 4-3(b), purporting to have addressed all adverse rulings. Smith tendered pro se points for reversal. Because counsel failed to discuss all of the adverse rulings in the record in compliance with *Anders* and Rule 4-3(b), we deny counsel's motion to withdraw and order rebriefing.

I. *Background*

On January 13, 2023, Smith was charged with one count of raping his niece ("MC") who was under the age of fourteen at the time. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2019). On January 14, 2025, shortly before trial, the State amended the information to charge Smith with a second count of rape at a time when MC was a minor and he was her uncle. Ark. Code Ann. § 5-14-103(a)(4)(A)(ii).

A jury trial was held on February 10 and 11, 2025. The trial revealed that a hotline call had been made by a counselor at MC's school. MC, who was sixteen years old at that time, was taken for a forensic interview during which MC disclosed several instances of sexual abuse committed by Smith. Detective Brian Branstetter with the Hot Springs Police Department observed the interview of MC at the Child Advocacy Center and later interviewed Smith at the police station. MC, who was nineteen years old at the time of trial, testified that Smith began sexually abusing her when she was approximately twelve years old.

Defense counsel called Brandy Smith, Smith's wife and MC's aunt, to testify on his behalf; the defense also called Pamela Lininger, MC's grandmother, who lived with Smith and Brandy during the relevant time period, to testify on Smith's behalf. Moreover, Smith took the stand to testify. The jury returned a guilty verdict and sentenced Smith to consecutive terms of thirty-five years on count one and thirty years on count two.

## II. *Adverse Rulings*

Appellate counsel addressed the sufficiency of the evidence, a speedy-trial issue, trial objections—some of which were not adverse––and sentencing. Appellate counsel, however, failed to address two adverse rulings that occurred while trial counsel was questioning MC;

2

an adverse ruling when Detective Branstetter was re-called to the stand; and the denial of Smith's request for a bond reduction.

A.     Cross-Examination of the Victim

Defense counsel became argumentative during his cross-examination of MC, and the trial court sustained the State's objections in the following excerpts:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Were you scared whenever he was bribing you with vapes? |
| [MC]: | Yeah, of course. |
| [DEFENSE COUNSEL]: | Yeah, you talked about the—you felt dirty, and you were taking these showers. Whenever you're puffing on that vape and getting high, were you feeling dirty then? |
| [PROSECUTOR]: | Objection, Your Honor. |
| THE COURT: | Sustained. |

. . . .

| | |
|---|---|
| [DEFENSE COUNSEL]: | You were scared cause it didn't happen; is that what you're telling me? You had the—you had the courage—when you were vaped up, you had the courage to sit there and say, don't, I'm not gonna give you a blowjob, but you don't have enough to say, I'm not gonna have sex with you. [MC], do you understand how none of this makes any sense? None of this adds up. |
| [PROSECUTOR]: | Objection. That's not a question. |
| THE COURT: | Sustained. |
| [PROSECUTOR]: | He's arguing. |
| THE COURT: | Sustained. Ask your next question. |

| | |
|---|---|
| [DEFENSE COUNSEL]: | I said do you understand. She can understand it or not, Judge. I'll ~ I'll ~ (SPEAKERS SPEAKING SIMULTANEOUSLY) |
| THE COURT: | Rephrase the question, [Defense Counsel]. |
| [DEFENSE COUNSEL]: | Judge, I apologize. I apologize. I was out of line. |

## B. Re-call of Detective Branstetter

Appellate counsel addressed in her brief a bench conference at which trial counsel was attempting to introduce impeachment evidence without calling MC—whom he had not subpoenaed—to the stand, but there was an adverse ruling once Branstetter took the stand that appellate counsel failed to address in her brief.

| | |
|---|---|
| [DEFENSE COUNSEL]: | Now, is that an accurate reflection of the statement provided by [MC] during that interview regarding the last incident with Mr. Smith? |
| [BRANSTETTER]: | To the best of my knowledge, it would be. |
| [DEFENSE COUNSEL]: | Okay. All right. And can you tell the jury basically what she told the interviewer at the child advocacy center about that last incident? |
| [BRANSTETTER]: | Okay, you want me to start with the part here where it says "[MC] said"? |
| [DEFENSE COUNSEL]: | Yes. |
| [BRANSTETTER]: | The last time that anything happened— |
| [PROSECUTOR]: | Your Honor, I'm gonna object. Can we approach? |
| THE COURT: | You may. |
| [DEFENSE COUNSEL]: | I can move—well— |
| THE COURT: | You wanna rephrase? (AT BENCH CONFERENCE) |

4

| | |
|---|---|
| [DEFENSE COUNSEL]: | Yeah, I was gonna say we can rephrase it. |
| THE COURT: | Then rephrase. |
| [PROSECUTOR]: | Well, like, if—I don't want him just reading off—(SPEAKERS SPEAKING SIMULTANEOUSLY) |
| [DEFENSE COUNSEL]: | That's what I was getting—(SPEAKERS SPEAKING SIMULTANEOUSLY) |
| [PROSECUTOR]: | That's—(SPEAKERS SPEAKING SIMULTANEOUSLY) |
| THE COURT: | I agree. |
| [PROSECUTOR]: | I mean, he—(SPEAKERS SPEAKING SIMULTANEOUSLY) |
| THE COURT: | That—(SPEAKERS SPEAKING SIMULTANEOUSLY) |
| [PROSECUTOR]: | —remembers it or he doesn't. |
| THE COURT: | Agreed. (AT BENCH CONFERENCE) |
| [DEFENSE COUNSEL] | CONTINUES: |
| [DEFENSE COUNSEL]: | We're gonna work around it. You can't technically read it, but can you look at it real closely, kind of--and let it refresh your recollection of when you interview--or when you saw the interview of [MC], and then reiterate to the jury what you recall from that interview as to what she said on the last incident? (THE WITNESS REVIEWING DOCUMENT) |

## C. Denial of Bond Reduction

Another adverse ruling that appellate counsel failed to address occurred when Smith asked the trial court early on about a bond reduction. It was set at $500,000, and the trial court did not reduce it after Smith's request.

| | |
|---|---|
| DEFENDANT SMITH: | Can I get a bond reduction or anything? ([Defense Counsel] CONFERS WITH DEFENDANT SMITH) |
| DEFENDANT SMITH: | So I'm basically screwed. |
| [DEFENSE COUNSEL]: | Your Honor, what is the amount of the bond at this time? |
| [PROSECUTOR]: | Five hundred thousand. |
| THE COURT: | His bond is set at five hundred thousand cash or professional surety. Any other questions? |
| DEFENDANT SMITH: | No, ma'am. |
| THE COURT: | You may be excused. |

Although this is not a meritorious basis for appeal, it was not discussed by appellate counsel. *See Holliman v. State*, 2023 Ark. App. 349 (finding compliance with *Anders* when counsel said that bond issue was moot and thus provided no meritorious basis for reversal). Once an appellant has been found guilty and is incarcerated, the issue of pretrial bond becomes moot. *Strong v. State*, 2025 Ark. App. 352, 717 S.W.3d 168. The proper means to challenge a bond decision is by a writ of certiorari, and a party who does not seek a timely writ of certiorari from a bond decision abandons the issue. *Lee v. State*, 2025 Ark. App. 516 (finding compliance with *Anders* with regard to the court's denial of Lee's request for a bond reduction in that because Lee did not seek a writ of certiorari, the pretrial bond issue was abandoned, and the issue was moot; therefore, the adverse ruling provided no meritorious ground for reversal).

III. *Conclusion*

Arkansas Supreme Court Rule 4-3(b)(1) requires that the argument section of a no-merit brief contain "a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests . . . with an explanation as to why each adverse ruling is not a meritorious ground for reversal." Generally speaking, if a no-merit brief fails to address all of the adverse rulings, it will be sent back for rebriefing. *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877. The requirement for briefing every adverse ruling ensures that the due-process concerns in *Anders* are met and prevents the unnecessary risk of a deficient *Anders* brief resulting in an incorrect decision on counsel's motion to withdraw. *Todd v. State*, 2025 Ark. App. 383. For these reasons, a no-merit brief in a criminal case that fails to address an adverse ruling does not satisfy the requirements of Rule 4-3, and rebriefing will be required. *Id.*

We order appellate counsel to cure the deficiencies in her brief by filing a substituted brief within fifteen days from the date of this opinion. We caution counsel that the list of deficiencies we have identified should not be considered exhaustive and that she should review the record to ensure that all adverse rulings have been addressed. After appellate counsel has filed the substituted brief, our clerk will forward her new motion and brief to Smith, and he will have thirty days within which to file pro se points for reversal. The State will likewise be given an opportunity to file a responsive brief if timely pro se points are filed.

Rebriefing ordered; motion to withdraw denied.

GLADWIN and THYER, JJ., agree.

*Mothershed Law, PLLC*, by: *La'Donnia M. Mothershed*, for appellant.

One brief only.